UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RILEY L. CLOSSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:21-cv-00772-TWP-DML |
| ) | |
| A. KOHLHEPP Officer, F. MCQUEEN Officer, ) | |
| and HOBGOOD Sergeant, ) | |
| ) | |
| Defendants. ) | |

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Defendants A. Kohlhepp's, F. McQueen's and Sergeant Hobgood's (collectively "Defendants") Motion for Summary Judgment. (Dkt. 34.) Plaintiff Riley L. Closson, ("Ms. Closson"), an inmate at Indiana Women's Prison ("IWP"), filed this civil rights action under 42 U.S.C. § 1983 alleging the Defendants violated her Eighth Amendment rights. Defendants seek summary judgment arguing the action should be dismissed because Ms. Closson did not exhaust her administrative remedies. Ms. Closson has responded, (Dkt. 47), and the Defendants did not reply. Because Defendants have not met their burden to show that a grievance procedure was available, the Motion for Summary Judgment is **denied**.

**I.     SUMMARY JUDGMENT STANDARD**

A motion for summary judgment asks the court to find that there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Federal Rule of Civil Procedure 56(a). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a

genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B).

The moving party is entitled to summary judgment if no reasonable factfinder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018).

## II.     BACKGROUND

### A.     The Amended Complaint

According to her Amended Complaint, (Dkt. 6), on June 30, 2020, Ms. Closson asked to be placed in protective custody but was instead placed on suicide watch because IWP does not have a protective custody unit. Ms. Closson was menstruating and wearing only a suicide smock. Officers escorted her to the bathroom, and when she saw that she had bled all over herself, she asked to be permitted to shower. She also requested sanitary napkins or tampons and a new, clean suicide smock. Those requests were denied. Ms. Closson resisted leaving the bathroom, and the officers used force to remove her. They took her to a "time out cell" and left her there naked with only a blanket. She was denied access to the bathroom for over four hours.

### B.     Indiana Department of Correction's Grievance Process

The Indiana Department of Correction ("IDOC") has an Offender Grievance Process ("the Grievance Process") that provides offenders an opportunity to attempt to resolve grievances before filing suit in federal court. (Dkt. 34-2 at 1.) The Grievance Process in effect at the time of the incident consisted of the following steps: (1) a formal attempt to resolve a problem or concern following an unsuccessful attempt at an informal resolution; (2) a written appeal to the facility warden or the warden's designee; and (3) a written appeal to the IDOC Grievance Manager. *Id.* at 3.

Inmates must submit a grievance no later than ten business days from the date of the incident. *Id.* at 9. The grievance specialist reviews the grievance, and either accepts and records it, or rejects it. *Id.* at 10. If a grievance is rejected, the inmate has five business days from when the form was returned to the inmate to then resubmit the grievance. *Id.*

**C.     Ms. Closson's Use of the Grievance Process**

Jennifer Foley ("Ms. Foley") is the Grievance Specialist at IWP and has access to the files and computer records in which copies of grievances are maintained. (Dkt. 34-1 at ¶¶ 2, 3.) According to a grievance history report, Ms. Closson has submitted two grievances that were accepted while incarcerated at IWP, neither of which were related to this incident. (Dkt. 34-3; Dkt. 34-1 at ¶ 34.)

Ms. Closson attempted to submit two grievances regarding this incident. Neither grievance is in the record, so the Court must work backwards from the information contained in the "Return of Grievance" forms, the first of which was submitted by Ms. Closson, (Dkt. 42-1), and the second of which was submitted by the Defendants, (Dkt. 34-4).

According to the Return of Grievance form submitted by Ms. Closson, she submitted a grievance on June 30, 2020. (Dkt. 42-1.) The date of the incident was interpreted by the Grievance Specialist as "1-1-20." *Id.* On July 8, 2020, Ms. Foley returned the form as being submitted late. *Id.* At the bottom of the form, Ms. Closson wrote, "I had to write in pencial so the date was not all visible." *Id.* (spelling errors in original).

Ms. Closson attempted to submit another grievance, which was received on July 20, 2020. (Dkt. 34-4.)[1] Because a copy of that grievance is not in the record, it is unclear when she submitted

---

[1] This was the only grievance related to this event discussed by the Defendants. (*See* Dkt. 34-1 at ¶ 37) ("A review of Offender Closson's History of Grievances reveals one rejected grievance dated July 20, 2020."). As noted above, the Defendants did not file a reply.

3

it. That form was returned on August 14, 2020, as being late. *Id*. Ms. Foley provided the following explanation:

> 6/31/2020 is not a valid date. You have 10 business days from the date of incident to file a grievance. The grievance was received 7/20/20. However, due to the nature of your grievance I looked into this.
>
> Per Major Neese, this incident has been investigated and a report was submitted to the Warden. If you received a CAB you can appeal that if you feel you were violated through the DHB appeal process/classification appeal.

*Id.*

Ms. Closson did not resubmit a corrected formal grievance. (Dkt. 34-1 at ¶ 41.)

## III.  DISCUSSION

The Prison Litigation Reform Act ("PLRA") provides, "No action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e; *see Porter v. Nussle*, 534 U.S. 516, 524−25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532 (citation omitted). The requirement to exhaust provides "that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Woodford v. Ngo*, 548 U.S. 81, 88–89 (2006) (citation omitted).

Exhaustion of available administrative remedies "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90. "To exhaust available remedies, a prisoner must comply strictly with the prison's administrative rules by filing grievances and appeals as the rules dictate." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020).

While a prisoner "must exhaust available remedies," she "need not exhaust unavailable ones." *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016). An administrative procedure is unavailable when 1) the process operates as a "simple dead end," 2) when it is so opaque that it is incapable of use, or 3) when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859–60. Exhaustion is an affirmative defense, and the defendants bear the burden of demonstrating that the plaintiff failed to exhaust all available administrative remedies before she filed this suit. *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015).

The content of the grievances is unknown, making it difficult to apportion fault or determine if the grievance process was available.

It appears that Ms. Closson's first grievance was rejected as untimely based on illegible handwriting. That is, the grievance was received the same day of the incident, June 30, 2020, but the date of the incident as written on the form was perceived to be January 1, 2020.[2]

When Ms. Closson received the returned form on July 8, 2020, she had five business days to submit a corrected grievance. (Dkt. 34-2 at 10.) Thus, her second grievance was due by July 15, 2020. It is not clear when the second grievance was *submitted*, but it was recorded as *received* on July 20, 2020. (Dkt. 34-4.)

When Ms. Foley rejected Ms. Closson's grievance, she provided two reasons. The first was that June 31, 2020, was not a valid date, and the second was that the form was turned in too late. (Dkt. 34-4.) But based on the nature of the grievance, Ms. Foley investigated the matter and told Ms. Closson that the incident had been investigated and a report had been submitted to the

---

[2] One can imagine that Ms. Closson wrote "7/1/20" believing the date to be July 1 rather than June 30, and the "7" was misinterpreted as a "1." But the Court cannot decide this matter on what it imagines to be the case.

warden. *Id.* Ms. Foley further instructed Ms. Closson to raise any concerns with the disciplinary process by following the disciplinary hearing board appeal process. *Id*.

There is no dispute that Ms. Closson did not file a third grievance after receiving the response to her second grievance on August 14, 2020.  But it is impossible to tell with this record if there was an additional step for Ms. Closson to take.  If Ms. Closson requested that prison officials investigate the officers' conduct, then she received the relief she sought (an investigation and report to the warden) and was not required to move to the next step. *Thornton v. Snyder*, 428 F.3d 690, 695−96 (7th Cir. 2005) ("Once a prisoner has won all the relief that is available under the institution's administrative procedures, his administrative remedies are exhausted.") (internal citations omitted).  Further, if Ms. Closson resubmitted her second grievance by July 15, 2020, then it was wrongfully rejected as late because she had five days to correct the error in the first grievance. *See Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006) ("[W]hen prison officials prevent inmates from using the administrative process . . . the process that exists on paper becomes unavailable in reality.").

The Defendants have not met their burden of proving that Ms. Closson failed to complete an available administrative remedy.  Accordingly, their Motion for summary Judgment must be **denied**.

## IV.  CONCLUSION

The Defendants' Motion for Summary Judgment, Dkt. [34], is **DENIED**.  The evidence is simply inconclusive based on the thin evidentiary record.  Pursuant to the Court's scheduling order, if the Defendants' reply fails to confront Ms. Closson's evidence, the Defendants will have forfeited the right to present that evidence at a *Pavey* hearing.  (Dkt. 27 at 2.)  The Defendants did not file a reply and, therefore, they will not be able to supplement the record with additional evidence at a

*Pavey* hearing in order to meet their burden. As such, pursuant to Federal Rule of Civil Procedure 56(f)(1), the Court gives the Defendants notice of its intent to grant summary judgment in Ms. Closson's favor on the exhaustion defense. The Defendants **shall have through Friday, July 8, 2022**, in which to respond to the Court's proposal and either (a) show cause why summary judgment should not be entered in Ms. Closson's favor on this issue, or (b) withdraw their affirmative defense of exhaustion.

    **SO ORDERED.**

Date: 6/21/2022

                                                    Hon. Tanya Walton Pratt, Chief Judge
                                                    United States District Court
DISTRIBUTION:                                Southern District of Indiana

Riley L. Closson, #222513
INDIANA WOMENS PRISON
Inmate Mail/Parcels
727 Moon Road
Plainfield, Indiana  46168

Peter Andrew Inman
INDIANA ATTORNEY GENERAL'S OFFICE
peter.inman@atg.in.gov